Based on the docket 2-15-0992, the people of the state of Illinois, Tlingit-Apaleen, and Yale v. Rico, Defendant McConnell. Argument on behalf of the Defendant McConnell, Mr. J. Whiteman. Argument on behalf of the Tlingit-Apaleen, Ms. Joan Urie. Are you both ready to proceed? Counsel them when you're ready. Good morning, may it please the Court, Counsel. I am J. Whiteman, an Assistant Appellate Defender with the Office of the State Appellate Defender, Counsel for Defendant Appellant Miguel Rico, who asserts that the circuit court erroneously dismissed his post-conviction petition because it set forth the gist of a constitutional claim that appellate counsel was ineffective for failing to argue that his custodial statements to the police should have been suppressed, both because, one, his Miranda rights were violated when detectives continued to interrogate him after he requested an attorney, and secondly, the detectives' threats and promises rendered the statements involuntary. I know that this Court is familiar with the facts and has read the briefs, and there are only a couple of facts that I think need highlighting for this Court, for this issue. And those concern the statements made by the circuit court when the petition was dismissed summarily at the first stage. Specifically regarding the first issue, the circuit court stated, quote, the issue does not appear to have a reasonable probability of success on appeal. Regarding the second issue, while the language was a little bit different, the court essentially stated that had appellate counsel presented this same issue to this Court, the answer would have been the same, and it would have been denied. It's respectfully submitted by the defendant that this misstates the standard that should be applied at the first stage of post-conviction proceedings. The question is not as to the ultimate merits of the argument, but as to whether, in fact, the issues have arguable merit, either in law or in fact. And it is clear in the instant case, given this very low threshold that was set forth in Hodges and in Edwards, that the defendant's petition set forth the gist of a claim that appellate counsel was arguably ineffective for failing to raise these issues. This is judged under the Strickland standard, with which everybody is familiar. Pursuant to that standard, the first question, obviously, is whether the appellate counsel's performance fell below an objective standard of reasonableness. The second issue, then, is whether or not the defendant was prejudiced. But turning to the first argument, that counsel's performance fell below an objective standard of reasonableness, it is clear that the underlying issues are issues that are still in the state of flux, both in this Court and across the State. This Court has devoted considerable attention to this issue in Mandoline most recently, in People v. Crotty, and in People v. Miller. And it's interesting that the State says that Mandoline just simply solves the issue and answers the question, because what Mandoline really shows is that this is an issue that is still present before the Court, and that the Court is still using to work out some of the issues that stem from Edwards and Bradshaw, the two United States Supreme Court cases, which say that when a defendant requests counsel, then the police must stop interrogating until they make counsel present, unless the defendant initiates the conversation. So what do you say is different here than the situation in Mandoline? In Mandoline, the primary difference is that this Court noted that there was an express waiver. And in fact, the decision in Mandoline seems to suggest that there was a separate form, not simply a waiver of rights form per Miranda, but a separate form by which a written waiver of counsel was submitted. It's also noted that the defendant orally waived specifically the right to counsel. And the Court in Mandoline referred to the waiver as a, quote-unquote, express waiver on, I believe, two occasions in the opinion. Here, there was no express waiver. It's even arguable that there wasn't a waiver that was given by counsel, and that goes to the second of the two issues that are used by Edwards and Bradshaw in other cases to determine whether or not the statement should have been suppressed. But the finding by the Court, to answer your question a little more directly, I hope, the defendant said it was an express waiver. In the instant case, the detective was speaking with the defendant. He said, I don't want to talk to you. I want my lawyer present. The statement... Excuse me. The midnight statement? That's the midnight statement. And then when the detective came back for the 2 p.m. statement, he refused to answer any questions relating to the case. He said that he wanted to chill with her. He wanted to talk specifically about his girlfriend, about his parents. The officer then provided Miranda warnings, and then when she spoke with the defendant, he would speak about unrelated issues. He spoke a little bit about gang activity. He was asking about his girlfriend. But she specifically noted that any time she asked about questions relating to the instant case, he refused to answer. And she said... I don't want to talk about that, or I want to remain silent. I believe what the officer testified was that he remained silent, and she said specifically he didn't say no, he didn't say yes. He didn't say anything at all. And he didn't know how to invoke his right to counsel, right? Because he had previously done that 12, 14 hours earlier. Yes. Or 13, whatever. So it's not as if he didn't know how, he knew how, but in this instance, he didn't do it again. He did not specifically invoke it, correct. But he did not provide, as was occurring in Mandalay, an express waiver of the right to counsel. And he didn't provide what we argue is a valid waiver of counsel. He simply didn't respond to the questions. There's no indication, and it's the burden of the state to prove, that the defendant in fact waived the right to counsel. The mere absence of that waiver, we argue, is not sufficient in this case. The other aspect of the defendant's statement is that when the second or maybe the third conversation occurred with the detective, this one being in the evening, approximately 5 or 6 p.m., at that point, and one of the differences between Mandalay, and specifically differences between Crotty and, or similarities between Oliver and Flores, and differences between Crotty and Miller, is that the next time the detective spoke with the defendant, she didn't ask questions. But she instead made statements that were likely to elicit a statement from the defendant. It wasn't a question. It was, we found these items at your house. At which point, the defendant, as occurred in other cases, said, all right, you've got me. He did ask some question, though. He asked. During the course of that 6 p.m. interview, right? Yes. He asked, didn't he ask what's going on with the case or something like that? When she came back into the room at his request, he asked what's going on with the case. And it's unclear as to whether the questions were strictly limited to his girlfriend and his parents, or whether it was in a broader sense what's happening with the case. Although, what's happening with the case was not sufficient in Olvera, per that court, to create a question about the specific investigation. But yes, he did ask questions about his girlfriend. The detective did not respond by providing warnings, as you should have. The detective did not respond by asking questions. Instead, the detective responded by saying, we've got you. And generally, statements where the officer tells the defendant, we have this evidence against you, or here's what's happening against you, for instance, when a defendant was told those are state's attorneys, and they're deciding what charges to press against you. And the defendant said, you know, I need to, I want to talk with them. In circumstances like that, where the statement is made and is likely to elicit a confession from the defendant, that simply isn't allowed by Bradshaw in Edwards v. Arizona, or the Supreme Court case of Olvera at issue here. He, it was during that 6 p.m. statement, where he says what's going on with the case, and true, you're correct that she did not re-advise him. She did tell him that a search warrant had been served, and some incriminating items had been found, which was true. Yes. Right. And likely to elicit an incriminating response. Correct. And that's what concerns us, and that's what makes this an arguable issue. And that's all that needs to be provided by the defendant at this stage, is that he present an arguable issue of merit that is arguable within the law and the status of the law. And again, the status of the law is unclear. As this Court said in Peeble v. Miller in 2009, there is a genuine question as to what is supposed to occur after the defendant has revoked his, or has said, has invoked his right to counsel, and then asks a general question. The right to remain silent, not right to counsel, was it? Well, it was the right to counsel, and originally he stood on his right to not talk. And then he said, I want counsel. And that was at the midnight meeting, when he requested counsel. And that's when Detective, I believe it's to Sinai, stopped the interview and stopped the interrogation. She had, for considerable time over the first hour, continued to question him despite his invocation of the right to remain silent, when he said, I'm just not talking to you. I don't want to talk to you. It was toward the end of that first hour's discussion when he said, I want an attorney. And that's when the interrogation should have stopped. And in fact, that's when to Sinai halted the interrogation at that stage. So it was the invocation of the right to counsel. And when that occurs, that has to be scrupulously honored by the officers. But there becomes a question as to when, as occurred here, the defendant asks a general question. And generally, the cases break down into two categories. Was it a general question, or was it one specifically related to the investigation? And in Miller, much of this court's rationale was that the question that was asked was about why the police needed to search his car. And then that led to a statement by the defendant as to the nature of the offense. The key difference here, and one of the concerns in Miller, and one of the distinctions that was drawn, was that the officer did not make a statement that was likely to elicit an incriminating statement. And the court was concerned about that. Here, there was a statement made that was likely, and in fact did, elicit an incriminating statement. It is on that basis that the defendant states that counsel's performance fell below an objective level of reasonableness in this case, because counsel didn't raise that issue, which is clearly an arguable issue, as demonstrated by the fact that Mandoline, recently decided by this court, was a direct appeal. And the court recognized that it was a meritorious issue. It may have gone against the defendant in that case. And again, one distinction between Mandoline and the instant case is that in that case, there was an express waiver. And here, if there was any waiver, it was simply one of inaction, and it wasn't a matter of the defendant expressly stating, as occurred in Mandoline, this is what I want done. But he never participated. He never evinced a willingness to discuss the case or the investigation. And for that reason, counsel, on appeal, directly should have raised this issue. The second issue that was raised by the defendant and argued in the briefs concerns whether the defendant's statement was knowingly and voluntarily and intelligently made, or whether the officers engaged in conduct by making promises and threats that rendered his statement voluntary. And again, this is an arguable issue and one on which the defendant's statement of facts has to be taken as true at this stage. And the question is simply whether or not an arguable issue of merit is presented that requires that this stage progress from the first stage to the second stage so that counsel can help the defendant formulate the argument and present it in an appropriate form. That didn't happen and should have happened in this case. Clearly, prejudice occurred because had the motion of suppress been granted, this would have been a completely different case. Because there was merit to the argument, because the defendant was prejudiced, then the appellate counsel erred by not submitting this issue on direct appeal. And again, it's an issue that is clearly being considered. And the detective's conduct, as was stated in People v. Miller, was one that escalated the interaction to a more coercive level than the defendant's question of, have you talked to my girlfriend? Have you talked to my parents? If there are no further questions, then I would briefly summarize by asking that this court reverse the finding of the circuit court below and remand this matter for second stage proceedings, including the appointment of counsel. Thank you. Counsel? Good morning. Joan Kripke on behalf of the people of the state of Illinois. Counsel, I'd like to redirect the focus of the court. We're here looking at a post-conviction petition. We're not here on direct appeal. And therefore, we have to look at layers. We're not here looking at the ineffective assistance of trial counsel. We're not here looking at what happened and what happened during the motion to suppress. Because what the defendant has failed to do in his argument is point out to the court where the trial court was manifestly erroneous in its decision. He's talked about he's relitigating the issues for you and saying this was wrong, this was right, this happened, that did not happen. At this point, he had a fully litigated motion to suppress, and the court made evidentiary findings during it. In the post-conviction, in the dismissal of the petition, first of all, I wanted to point out that the post-conviction court, there is an order on page C681, it's for the 150992 case, where it's just the standard language. The court finds that the claims raised in the instant petition are frivolous and patently without merit. So Judge Shates, first of all, made that finding, which I believe they said he never made that finding. He was using the wrong standard of review. And that's simply not true. He used that language. There's a longer written order dismissing in which Judge Shates went through the issues. So, first of all, this court must look at the fact that the motion to suppress was fully litigated. And you must look at the entire record. The PCP, the court says that the PC fails, let me get this, fails to state the gist of a claim that appellate counsel's claims were objectively unreasonable and prejudiced the petitioner. There's no reason to believe that the appellate court would have found the trial court's credibility findings against the manifest weight of the evidence. And that's what this court has to look at. Was that a wrong decision? And then Judge Shates went through what the trial court, the trial court's reasoning. And what Judge Shates said was, in the PC, the defendant failed to point out where the trial court's findings were incorrect. All it did was re-litigate the issue of why he felt that the motion to suppress should have been granted. And that's not the standard that you're looking for at the PC level. And more to point out, as in Mandolin, in this case, part of the motion to suppress was granted. And the court said, okay, up until this point, you had invoked the right to counsel. They shouldn't have persisted. Anything you set up to whatever the point was, that's being excluded. Once they came in and remanded, when someone realized, oh, you know, he's asking for counsel, we shouldn't have been talking to him, they remorandized him. And there were in and out and in and out and different discussions. And he, the defendant, can't think of the word, he invoked, he, it's not the word invoked, he started the conversations. Re-initiated. Thank you. He re-initiated the conversation with the police. And the trial court in the motion to suppress made findings of fact on that. And they found that the re-initiation came from the defendant, not from the police. Once it went up to PC, once it came up here on appeal and the appellate court, the appellate, excuse me, the appellate counsel decided not to re-litigate those issues, what he had to show on PC is that there was some, that first of all, that there was something arguably wrong with what the appellate counsel had done. Or failed to do. Or failed to do. And he had to look at the reasoning. But when you look at the issues that were raised on the PC, all he did was re-litigate the motion. He didn't point out the failings of the trial court's rulings. And that's what Judge Shain said. When you look at it, there was a manifest way to the evidence looking at the trial court's decision, which the PC court gets to look at. And so there was nothing manifestly wrong with it. He would not have succeeded on appeal. And that the appellate counsel was not required to re-litigate or to raise an issue that it deemed was frivolous. And there's nothing the defendant has shown here that it was frivolous. He's merely trying to re-argue the motion to suppress. He's not showing you where the error was in the trial court's ruling denying the motion to suppress. You question that? Oh, okay. I'm just looking to see. That is where the argument has to be. You can't come up here again. The defendant can't come up here again and re-litigate the motion to suppress and say this was wrong and this is what I think happened here. And his appellate counsel should have seen that and therefore should have raised it on appeal. What he needed to do was to have said this is where the trial court's ruling was wrong and this is why my counsel was wrong for failing to have a tamped-down ruling. But just to re-litigate the motion to suppress, it's already been litigated below. What they have to show you is why the trial court was wrong. You can say that this was – that there were different issues that were arguable, but just saying I have an arguable issue of a constitutional magnitude, if everybody did that, if they all just came in and said, well, you know, ineffective assistance of counsel, there would be no first stage. Everything would immediately get shoved to the second stage. And that's where we see the fallacy in what the defendant is arguing. They have to show the error in the trial court's reasoning, and they never did that. They just came up and said, here's why I should have won the motion to suppress, and they went through the facts again. And that's what Judge Shane says was incorrect and why he dismissed the petition. So what Strickland does require is an arguable basis for the claim that the counsel's performance was objectively unreasonable under professional norms. And then for the second stage, for the prejudice prong, you have to have an arguable basis that there's a reasonable probability that but for the counsel's performance, the appellate counsel's performance, the result of the proceeding would have been different on appeal, would have been different. And in this case, it would have been that you would have reversed the case or you would have sent it back for a second stage hearing. And that has not been demonstrated in the PC. No, we would have sent it back for a new trial without the statements. Oh, no, because it would have come up because it was a dismissal of the PC. Right. But his point is that if appellate counsel had raised the motion to suppress the statements in the appeal and we had granted it, it goes back for a new trial. Right. Can I talk? Correct. Okay. Correct. Excuse me one second. Oh, sure. Again, the PC court found that the defendant had not presented any arguments that the trial court had, quote, misapplied the law or that its findings were against the manifest weight of the evidence and had, quote, regurgitated the same arguments from the motion to suppress. And that's why they said that there was no gist. They can come in and say, well, we thought, as they just did now, they were going through the evidence and saying this was wrong, this was wrong, but they never came in and said why the trial court's reasoning was inappropriate. More importantly, the trial court made credibility determinations. And they just said there was one part where the trial court came in and said the defendant said he was being coerced by the police, that they had the law book and the law book didn't show that the policeman had left the room and therefore he was in the room and he was pressuring me when I wrote the statement. But the law book was brought in at the trial to impeach the police officers, both trials. There were two trials. And at both trials, that was brought in and the jury still convicted him. They were still, you know, that information was brought in, they still convicted him, they still took into account the statements that the defendant had made, even though that was brought in as impeaching evidence. Finally, again, the appellate court's counsel is not required to brief every conceivable issue. And it's not incompetence or ineffectiveness on the part of appellate counsel to refrain from raising issues which in that person's judgment are without merit. Unless counsel's appraisal is just completely off base. And unless the underlying issues are meritorious, the defendant hasn't suffered any prejudice. And I think that that's what defendant has when the language is used is that the argument would not have been successful on appeal. That goes, excuse me, not as a standard on how the PC is supposed to be judged, but it goes to whether the appellate counsel is required to brief every issue that's put before it. And the answer is the appellate counsel is not. And in this case, the appellate counsel made a determination based on the trial court's reasoning that showed that there was a proper determination made on the motion to suppress. And the defendant has not brought up anything yet to show us where the reasoning was wrong with the appellate court. They've just re-litigated the issue one more time. And for that reason, they don't have to affirm the dismissal of the PC as they say. Are there any other questions? Thank you. Sorry. Thank you. May I proceed? Very briefly, I want to address a few comments made by the State. The first and foremost being the allegation by the State. And then there was a comment made by the circuit court in its order dismissing the I'm sorry, the PC petition at the first stage. And that was that the defendant hasn't said at the first stage why the ruling was legally wrong. And this completely distorts the standard that was set forth by the Supreme Court of People v. Hodges. It's a very low standard. The question is, does the defendant present the gist of a claim that has arguable legal merit? It doesn't have to show that he's going to win outright on ultimately. The defendant has to demonstrate that he has an arguable issue that justifies the appointment of counsel to help him shape that issue. And when the State in this instance can present a brief that uses about 10 pages to analyze People v. Mandoline, it demonstrates that the defendant needs counsel as well to be able to discuss that issue in a way that the trial court here wishes he had done. But it's unreasonable, as Hodges points out, to expect a defendant to be able to shape a matter legally. He doesn't have to do that. The arguable legal merit standard, in order to establish that, though, doesn't the defendant have to raise some error with the trial court's analysis? Can't just say, you know, hey, the law is really, to use your word, in flux on this. Therefore, gee, I could have had a good issue on appeal. I might not have won, but I had a good issue. Doesn't he have to say something else to tie it more closely to the analysis here? Well, and I believe that he did cite to Oliveira, he cited to some of the rules regarding Bradshaw and Edwards. And he claimed that his statement did not reinitiate the conversation with the police officer. And he indicated that he did not knowingly and voluntarily waive his right to counsel. And that is an issue that certainly could, and more specifically. So you think that's enough? Because this is first stage, just making those statements is enough? Well, and I'm getting a little ahead of myself. To the extent that the claim really doesn't go that deeply. The claim goes to whether appellate counsel should raise this issue. And then the question becomes whether the issue has merit. And certainly it is one that has arguable merit, as indicated by this court in Mandoline and the discussion that was had. So the question first goes to whether appellate counsel was ineffective. Did appellate counsel reach a reasonable and objective level of performance? And where defense counsel in Mandoline files a brief undirect appeal, challenging Crotty and challenging Miller, and relying upon Oliveira and other Supreme Court cases, that shows that this is an issue that has arguable merit. And so then the question becomes whether or not appellate counsel was ineffective. Let me just ask you something about procedurally, if this was to be sent back for stage two. And just envision then that the hearing that you would have then before the circuit court, when you can bring matters in outside the record and so forth. Just envision for a moment then, does appellate counsel, is he then or she called to testify? And to basically discuss why or why not they didn't pursue this issue. And their experience as an appellate attorney, and how many cases that they've argued before the appellate court. As well as their opinion of the case law. And where this is going since it is in a state of flux. Is all of that then part of the game? It can be. And it has been in some cases. Where counsel, whether it's trial counsel or whether it's appellate counsel in this case, is called to discuss counsel's awareness of the issue. Whether or why counsel didn't raise it. That can be. It usually is not. It usually is more a matter of objectively looking at it. Evaluating the issues and determining whether or not this is an issue that should have been raised by counsel. And there are numerous times issues where there's a question about counsel, appellate counsel's effectiveness to not challenge something that perhaps is even more cemented than this. And the best example that I can give is that until recently, it was almost considered a very difficult climb to challenge McFadden. And then very quickly that became bad law. And so it's incumbent upon appellate counsel to chip away at issues, even if they seem like a very difficult climb to make. In this case, however, it wasn't that difficult to climb. And again, one of the distinctions between this case and Mandolin is that there was an express waiver there. If you have an instance where the waiver is as difficult to discern as it is in this case, where the defendant refuses to answer questions and doesn't participate without counsel being involved, until he's confronted by a statement that increases the coercive level that was presented by the defendant's general question of what's happening. When that happens, then it changes the ballgame. In Mandolin, there was no question that the defendant clearly wanted to talk about the case, signed a written waiver, gave an oral waiver, the waivers were termed express. It's a different issue. And if Mandolin could raise that issue on direct appeal, the issue should have been raised in this case. If there are no further questions, I believe my time is up. I thank you for listening to me and ask that you reverse and amend this case for second stage proceedings. Thank you. All right. Thank you very much for your arguments. Most enlightening this morning, and we are adjourned.